# In the United States Court of Federal Claims

No. 22-1473C
(Filed: April 27, 2023)

```
*************************************
                                     *
JOHN BOYD, JR., et al.,              *
                                     *
              Plaintiffs,            *
                                     *
       v.                            *
                                     *
THE UNITED STATES,                   *
                                     *
              Defendant.             *
                                     *
*************************************
```

**OPINION AND ORDER**

    Plaintiffs, John Boyd, Jr., Kara Boyd, Lester Bonner, and Princess Williams individually and on behalf of a class of socially disadvantaged farmers ("SDFs")[1] filed a complaint alleging breach of contract by the United States ("the Government") arising from the Inflation Reduction Act ("IRA"), Pub. L. No. 117-169.  The Government now moves the Court, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), to dismiss the complaint for failure to state a claim upon which relief can be granted on the grounds that Plaintiffs' complaint fails to establish all of the essential elements of contract formation.  Plaintiffs filed their Response to the Government's Motion to Dismiss on April 7, 2023.  ECF No. 15.  The Court finds it unnecessary for the Government to file its Reply.

    For the reasons set forth below, the Government's Motion to Dismiss is hereby **GRANTED.**

### I.    Background

    This case pertains to two sections of the American Rescue Plan Act of 2021 ("ARPA"), Pub. L. No. 117-2, §§ 1005-1006, 135 Stat. 4, 12-14 (2021), and Executive actions by the Department of Agriculture's ("USDA") Farm Service Agency ("FSA"). ARPA § 1005 directed the Secretary of Agriculture ("Secretary") to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher" as of January 1, 2021, on certain loans "made" or "guaranteed" by the Secretary ("FSA loans").  ARPA § 1005(a)(2); *see also* 7 U.S.C. §

---

[1] Plaintiffs' complaint states that this class is defined in §§ 1005–1006 of the American Rescue Plan Act ("ARPA"), Pub. L. No. 117-2.

2279(a)(5).  To facilitate implementation of § 1005, USDA created form FSA-2601 to provide eligible SDFs with notice of an opportunity to "accept," "discuss," or decline "the ARPA payment" pursuant to ARPA § 1005.  *See* Compl. ¶ 35; *see also* Compl. Ex. 1 at 1-3.   SDFs had to return form FSA-2601 if they wished to certify their eligibility, accept FSA's benefit calculations, and request payment.  *See* Compl. Ex. 1 at 1-3.  The FSA-2601 states that the information requested on the form "will be used" by FSA "in order to process the customer's request for payment according to ARPA and applicable regulations," and that a "failure to furnish the requested information may result in a determination that FSA cannot process the customer's request for payment."  Compl. Ex. 1 at 3.

ARPA § 1006 established a variety of programs and funding to address longstanding inequities for socially disadvantaged borrowers.  Compl. ¶ 3.  One of those programs directed the Secretary "to provide financial assistance" to certain SDFs who "suffered related adverse actions or past discrimination or bias in Department of Agriculture programs, as determined by the Secretary."  ARPA § 1006(b)(5); Compl. ¶ 75.  Congress appropriated not less than $50.5 million for this purpose.  *Id.* § 1006(a), 1006(b)(5); Compl. ¶ 75.

Congress subsequently passed the Inflation Reduction Act of 2022 ("IRA"), which repealed ARPA § 1005 and amended ARPA § 1006.  Pub. L. No. 117-169, §§ 22007-08, 136 Stat. 1818, 2021-23 (2022); *see* Compl. ¶ 58.  Specifically, the IRA repealed ARPA § 1005, which authorized USDA to make payments to certain SDFs with FSA loans.  Pub. L. No. 117-169, § 22008, 136 Stat. 1818, 2021-23 (2022).  The IRA also deleted the references in ARPA § 1006(b)(5) to "socially disadvantaged" farmers and broadened § 1006(b)(5) program eligibility to all farmers, while increasing the program funding from $50.5 million to $2.2 billion.  *Id.* § 22007.

The four named Plaintiffs in this putative class action allege that they are SDFs.  Compl. ¶¶ 1, 19-22.  Two of the four named plaintiffs, Ms. Williams and Mr. Bonner, allege that they submitted the FSA-2601 form requesting financial assistance payments pursuant to ARPA § 1005 and that submission of the form gave rise to an express or an implied-in-fact contract.  Compl. ¶¶ 24-57, 97-108.  They further allege in Counts I and II of the complaint that these purported contracts were breached when they did not receive any assistance payments and when Congress repealed ARPA § 1005 in the IRA.  Compl. ¶¶ 58-62.

The remaining two Plaintiffs, Mr. and Mrs. Boyd ("the Boyds"), allege that they "lobbied" President Joseph Biden and Senator Cory Booker with an "offer" not to sue the Government on discrimination claims in exchange for enactment of ARPA § 1006, that Congress "accepted" this offer and entered into an implied-in-fact contract with them by enacting this section, and that Congress breached this purported "contract" by amending the section.  Compl. ¶¶ 11-12, 63-80, 109-114.

## II.     Standard of Review

To survive a motion to dismiss for failure to state a claim under RCFC 12(b)(6), the complaint must have sufficient "facial plausibility" to "allow [] the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's factual allegations must "raise a right to relief above the speculative level" and cross "the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)

The Federal Circuit has reiterated that "[i]n ruling on a 12(b)(6) motion to dismiss, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009); *see also Bank of Guam v. United States*, 578 F.3d 1318, 1326 (Fed. Cir. 2009), *cert. denied*, 561 U.S. 1006, 130 S. Ct. 3468, 177 L. Ed. 2d 1056 (2010). Courts, however, are "not bound to accept as true a legal conclusion couched as a factual allegation." *Acceptance Ins. Co. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

To satisfy its burden at the pleadings stage, a plaintiff asserting a breach of contract claim must allege well-pleaded facts that, if taken as true, would establish all four elements of contract formation: "(1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States." *See, e.g., Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1381-82 (Fed. Cir. 2019) (quoting *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003)). A plaintiff asserting an implied-in-fact contract must establish the same elements as an express contract. *Id.* at 1381; *Schism v. United States*, 316 F.3d 1259, 1278 (Fed. Cir. 2002).

## III.    Discussion

### a. In Counts I and II of Plaintiffs' complaint, Plaintiffs fail to satisfy their burden to state a plausible claim for breach of contract.

In Counts I and II, Ms. Williams and Mr. Bonner allege that they submitted the FSA-2601 form requesting financial assistance payments under ARPA § 1005 and that submission of this form gave rise to an express or implied-in-fact contract. Compl. ¶¶ 24-57, 97-108. They further allege that these contracts were breached when they did not receive any assistance payments and when Congress repealed ARPA § 1005 in the IRA. Compl. ¶¶ 58-62.

The Government argues in its motion that Counts I and II of Plaintiffs' complaint should be dismissed because Plaintiffs' factual allegations do not state a plausible claim that they formed any contract with the United States. The Government further contends that Plaintiffs do not properly allege any of the essential elements of contract formation.

This Court agrees. Plaintiffs do not allege the existence of any unambiguous expression by government officials of an intent to enter into a contract with them as

program participants. *Am. Bankers*, 932 F.3d at 1381-82 (quoting *Anderson*, 344 F.3d at 1353) ("To satisfy its burden to prove such a mutuality of intent, a plaintiff must show, by objective evidence, the existence of an offer and a reciprocal acceptance."). Although Ms. Williams and Mr. Bonner allege that FSA officials entered into contracts with them as part of the statutory scheme under § 1005, the ARPA § 1005 program does not contain any language showing the Government's intent to contract. Instead, the program reflects Congress' intent only to "declare[] a policy to be pursued until the legislature shall ordain otherwise," not an intent "to create private contractual or vested rights." *Am. Bankers*, 932 F.3d at 1381 (quoting *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465-66 (1985)).

ARPA § 1005 directs the Secretary "to provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher as of January 1, 2021, to pay off the loan directly or to the socially disadvantaged farmer or rancher (or a combination of both), on" FSA loans. Pub. L. No. 117-2, §§ 1005-1006, 135 Stat. 4, 12-14 (2021). The text of § 1005 does not have any requirement that SDFs provide anything in exchange for a payment by the Government. *See id.* Further, the statute has no mention of contracts to be negotiated or consideration to be exchanged in this financial assistance program. *See id.* Thus, Plaintiffs' complaint fails to show that the Government intended to create binding contractual obligations under ARPA § 1005. *See Am. Bankers*, 932 F.3d at 1382 (quoting *Nat'l R.R.*, 470 U.S. at 466-67) (When analyzing a statutory program for the Government's intent to contract, courts "will not infer a contractual undertaking 'absent "an adequate expression of an actual intent."'").

Plaintiffs further argue that the terms of the FSA-2601 form show the Government's intent to contract and the existence of a valid offer and acceptance, but this argument also fails.[2] Ms. Williams and Mr. Bonner allege that the FSA-2601 form is an "offer" from the Government which they accepted by signing and returning them to FSA. Compl. ¶¶ 4-6, 35-42. The FSA-2601 form states, however, that the SDF recipients were "eligible for payment" under ARPA § 1005, and the form "will be used" by FSA "in order to process the" SDF's "request for payment according to ARPA and applicable regulations." Compl. Ex. 1 at 3. Communications from the Government of this sort are not offers that form a binding contract upon filling in the blanks of a Government-prepared form. *See XP Vehicles, Inc. v. United States*, 121 Fed. Cl. 770, 787 (2015) (quoting *Girling Health Sys., Inc. v. United States*, 22 Cl. Ct. 66, 71-72 (1990)) ("It is well recognized that 'mere solicitations, invitations[,] or instructions from the [g]overnment are not offers to contract that bind the [g]overnment upon [a] plaintiff's completion of a form, even when the solicitations, invitations or instructions are embodied in a statute or regulation.'"); *Tree Farm Dev. Corp. v. United States*, 585 F.2d 493, 500 (Ct. Cl. 1978) (explaining that "invitations by the [g]overnment to file applications do not necessarily equal an operative offer, the acceptance of which will

---

[2] Plaintiffs offer the same allegations to support both mutuality of intent and the existence of an offer and acceptance.

result in a binding contract").[3] Rather, from the face of the document, it appears that the FSA-2601 form is a notice of program eligibility and the means by which SDFs could certify their eligibility and request financial assistance under ARPA § 1005. *See* Compl. Ex. 1 at 1 (describing the FSA-2601 form as an "informational notice," notifying the borrower that "FSA records show . . . that you are eligible for payment"); *see id.* (including an eligibility certification under the option to "accept the ARPA payment as calculated by FSA."). This is not an unambiguous offer to enter into a binding contract.[4]

In sum, the plain language of ARPA § 1005 and the FSA documents all show that the FSA-2601 form was part of FSA's administrative action to facilitate Congress' mandate to provide financial assistance to SDFs. Thus, contrary to Plaintiffs' allegations, the FSA-2601 form is not an unequivocal offer to form an express or implied contract.

Additionally, Plaintiffs' claims fail for lack of consideration. Ms. Williams and Mr. Bonner allege that the Government "induce[d]" SDFs to accept the Government's payment calculations as provided in the FSA-2601 forms and to "waive" their right to challenge the Government's calculations. Compl. ¶ 41. The FSA-2601 form, however, expressly provided SDFs with the option ("Option 2") to meet with FSA officials, either by phone or in person, to "disagree with the calculation," identify "an error," or "disagree with the payment distribution," without waiving any right to request payment. Compl. Ex. 1 at 3. SDFs also had options to "accept" FSA's payment calculations ("Option 1") or to decline to receive a payment altogether ("Option 3"). Compl. Ex. 1 at 1, 3. The SDFs were free to select any of the three options, and they did not provide any consideration to the agency regardless of their selection of option 1, 2 or 3. *See id.* Indeed, the FSA-2601 form does not include the word "waiver" or any other release

---

[3] Ms. Williams and Mr. Bonner also focus upon the terms "offer" and "acceptance" in FSA's Notice of Funds Availability published in the Federal Register, and they label these statements as an offer and acceptance of a contract. Compl. ¶¶ 43, 49; *Notice of Funds Availability; ARPA Section 1005*, 86 Fed. Reg. 28,329 (Dep't of Agriculture May 26, 2021). But to form a contract, there must be an unambiguous offer and acceptance, not merely a use of those terms. *See*, *e.g.*, *Am. Bankers*, 932 F.3d at 1382.

[4] Ms. Williams also alleges that she spoke to an unidentified "FSA representative" about "her FSA-2601," who "informed" her "that selecting Option 1 would lock her into the U.S. Government's payment calculation" and "that selecting Option 1 was in" her "best interests." Compl. ¶ 50. However, Ms. Williams does not allege that the "FSA representative" with whom she spoke ever made an offer or ever offered something different from what was set forth in the FSA-2601. *See id.* Rather, Plaintiffs admit that FSA representatives were "not authorized to create or modify the [FSA-2601] offer letter which includes the payment calculation worksheet." *Id.* ¶ 49. Accordingly, any oral statements made to Ms. Williams by an FSA representative cannot be construed as modifying the FSA-2601 form into an unambiguous offer to contract.

language.[5] *See id.* Thus, it is manifest from the face of the FSA-2601 form that the Government did not bargain for, or receive, any consideration from SDFs arising from or depending upon the option they selected on the FSA-2601 form.

Plaintiffs also argue that they provided consideration by accepting "the fastest and most efficient form of relief and maintained or expanded their farming operations, supporting the U.S. Government's pandemic response and recovery efforts." Compl. ¶ 99. This allegation of consideration, however, is not sufficient for several reasons. First, there is also no indication in ARPA § 1005 or the FSA-2601 form that option one (to "accept" FSA's payment calculations) is the "fastest and most efficient form of relief," nor do the documents state that the purpose of the FSA payment is to support "the U.S. Government's pandemic response and recovery efforts." *See generally*, Compl. Ex. 1 at 1-3; ARPA § 1005. In addition, Ms. Williams and Mr. Bonner do not allege that they promised to devote the § 1005 payment proceeds to maintaining or expanding their farming operations, and in any event such a promise was not a requirement to receive financial assistance under § 1005. Moreover, merely accepting payment from another party is not a mutual exchange of consideration. Thus, Plaintiffs did not sufficiently allege that they provided consideration in exchange for receiving a statutory payment in accordance with the eligibility criteria and calculation formula proscribed by Congress in ARPA § 1005.

Finally, Plaintiffs' complaint fails to allege well-pleaded facts showing that a government official had actual authority to contract with them. In the complaint, Ms. Williams and Mr. Bonner allege that the "U.S. Government representatives on whose conduct Relief Plaintiffs and the other Relief Class members relied had actual authority to bind the U.S. Government in contract stemming from § 1005 of ARPA." Compl. ¶ 99.

In this case, however, no official was conferred with contracting authority by ARPA § 1005. *See 6601 Dorchester Inv. Grp., LLC v. United States*, 154 Fed. Cl. 685, 692 (2021) (citations omitted) ("In order for a government representative to bind the United States in contract, he [or she] must have actual authority; apparent authority will not suffice to bind the government by acts of its agents."). ARPA § 1005 does not include any language authorizing USDA (or FSA) to enter into contracts on behalf of the United States as part of that "farm loan assistance" program. *See generally*, ARPA §

---

[5] Plaintiffs argue in their response that they waived their right to appeal or challenge the Government's calculation of their ARPA payment because selecting Option 1 required them to "accept the ARPA payment as calculated by FSA." Compl. Ex. 1 at 2. The FSA Form however does not indicate any waiver of a right to appeal. In fact, the form gives SDFs under Option 1 an option to appeal: "If at least one, but not all, required signatures are received within 60 days of the date of this notification, the socially disadvantaged borrowers who have not signed will be notified of their appeal rights. If an appeal is not requested with 30 days, FSA will process the payment as described in this notice." Compl. Ex. 1 at 2. Further, the form even provides Option 2 "to discuss" the notice with the local FSA office "before making a decision," thus allowing an SDF to discuss the notice and then select Option 1, if desired. Compl. Ex. 1 at 2.

1005.  Given that Congress included specific contracting authority in many ARPA sections but omitted it from § 1005, Congress presumably "intended a difference in meaning" and did not intend for USDA (or FSA) officials to enter into contracts when making statutory payments under § 1005.  *Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1323 (2020) (quoting *Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 777 (2018)); *see, e.g.*, ARPA §§ 2703(b), 9815, 9815, 3301(b) 5004(b)(1); 6003(a), 9401.  The complaint fails to allege well-pleaded facts showing that a government official had actual authority to contract with them, and thus Counts I and II fail for this additional and independent reason.

Because Plaintiffs do not allege well-pleaded facts that, if taken as true, establish all four elements of contract formation, Plaintiffs fail to satisfy their burden to state a plausible claim for breach of contract.  *See Twombly*, 550 U.S. at 570 (If plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").  Accordingly, this Court **GRANTS** the Government's Motion to Dismiss Counts I and II.

### b. In Count III of Plaintiffs' complaint, Plaintiffs fail to satisfy their burden to state a plausible claim for breach of implied contract.

In Count III of the complaint, the Boyds allege that they "lobbied" President Joseph Biden, Senator Cory Booker, and other unidentified "Government officials" with an "offer" not to sue the Government on discrimination claims in exchange for enactment of a provision in ARPA, "which directed USDA 'to provide financial assistance to socially disadvantaged farmers, ranchers, or forest landowners that are former farm loan borrowers that suffered related adverse actions or past discrimination or bias in [USDA] programs,' in an amount exceeding $50,000,000."  Compl. ¶ 69-75 (quoting ARPA § 1006(b)(5)).  Plaintiffs further allege that Congress "accepted" this offer and entered into an implied-in-fact contract with them by enacting this provision in ARPA § 1006(b)(5).  *Id.* ¶ 75 (quoting ARPA § 1006(b)(5)).  Finally, Plaintiffs allege that Congress breached this purported "contract" by amending ARPA § 1006, such that "relief is no longer set aside for SDFs," and now "relief is available for *any* "farmers, ranchers, or forest landowners determined to have experienced discrimination . . . in [USDA] farm lending programs."  Compl. ¶¶ 77-78 (quoting IRA § 22007); *see also* Compl. ¶¶ 63-80, 109-114.

In its motion, the Government contends that Count III should be dismissed for failure to state a plausible claim for breach of an implied-in-fact contract.  Further, the Government argues that these allegations do not establish mutuality of intent to contract, an unambiguous offer and acceptance, or consideration.

This Court agrees.  First, Plaintiffs fail to show a mutuality of intent to contract.  There is a presumption that Congress does not intend to bind itself contractually when passing a public law, and there is no clear indication that Congress intended to enter into an implied-in-fact contract with the Boyds by enacting ARPA § 1006.  *See Am. Bankers*, 932 F.3d at 1381 (quoting *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465-66 (1985)) ("'[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create

private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'"). In order to "overcome the presumption, there must be a 'clear indication' that the legislature intended to create contractual rights enforceable against the government." *Id.* The text of the ARPA section at issue, however, does not contain any reference to a contract:

> The Secretary of Agriculture shall use . . . not less than 5 percent of the total amount of funding provided under subsection (a) [$1,010,000,000] to provide financial assistance to socially disadvantaged farmers, ranchers, or forest landowners that are former farm loan borrowers that suffered related adverse actions or past discrimination or bias in Department of Agriculture programs, as determined by the Secretary.

ARPA § 1006(b)(5). This provision of ARPA does not contain a "clear indication" that Congress intended to create enforceable contractual rights against the Government. *See Am. Bankers*, 932 F.3d at 1381 (quoting Nat'l R.R., 470 U.S. at 465-66).[6] Thus, Plaintiffs' allegations of their participation in the legislative process are not sufficient. *See Bay View, Inc. v. United States*, 278 F.3d 1259, 1266 (Fed. Cir. 2001). Accordingly, Plaintiffs fail to overcome the presumption that the enactment of ARPA § 1006(b)(5) did not create an implied-in-fact contract with them. *See Am. Bankers*, 932 F.3d at 1381.

The Boyds' claim also fails for lack of an unambiguous offer and acceptance. The complaint alleges the Boyds "communicated that, if the U.S. Government provided relief in ARPA for SDFs who had suffered USDA discrimination in the past, then they would not pursue such relief via litigation." Compl. ¶ 72. Plaintiffs further allege that "[t]he Boyds made this offer clear in their conversations with government officials, including Senator Cory Booker and President Biden." *Id.* ¶ 73. Finally, Plaintiffs allege in the complaint that the Boyds "did not litigate meritorious discrimination claims they could have brought against the U.S. Government" in "reliance" on ARPA § 1006. *Id.* ¶ 76.

The Boyds' purported offer is vague and nonspecific. Plaintiffs do not allege the particular claims that they chose not to litigate against the Government, or that their offer included a guarantee that they would receive any amount of compensation within any particular amount of time. In the absence of such facts, Plaintiffs alleged offer is not sufficient to satisfy the requirements of an offer. *See Petrini v. United States*, 19 Cl. Ct. 41, 45 (1989) ("Lack of ambiguity in offer and acceptance must be established if a contract is to exist.").

The allegation that Congress accepted a contract through the enactment of § 1006(b)(5) is similarly ambiguous. Plaintiffs do not allege that Congress knew about their purported offer, and the ARPA section at issue does not refer to the Boyds or any

---

[6] The legislative text similarly does not refer to any contractual undertakings by SDFs or refer to a mutual exchange of consideration with SDFs as a precondition for receiving this "financial assistance." *See* ARPA § 1006(b)(5).

purported offer.  *See* ARPA § 1006(b)(5).  Moreover, the ARPA section at issue did not specify any amount of compensation for Plaintiffs or any SDF, leaving it for "the Secretary" to "determine" the amount of any "financial assistance" for each eligible SDF.  ARPA § 1006(b)(5).  The ARPA section at issue also did not specify the total amount of compensation for all SDFs – Congress authorized the Secretary to provide financial assistance for SDFs totaling anywhere from $50.5 to $808 million, a wide range of discretion.  *Id.* § 1006(a)-(b).  Under these circumstances, Congress' enactment of ARPA § 1006(b)(5) cannot be construed as an unambiguous acceptance of a contractual offer.

Finally, Count III of Plaintiffs' complaint also fails for lack of consideration.  *See Crewzers Fire Crew Transp., Inc. v. United States*, 741 F.3d 1380,1382 (Fed. Cir. 2014).  Plaintiffs do not make any well-pleaded allegations indicating that they offered to waive a previously unasserted discrimination claim, nor did ARPA § 1006(b)(5) extinguish any legal right that they might have possessed prior to its enactment.  *See* ARPA § 1006(b)(5).  Accordingly, Plaintiffs remained free to litigate any previously unasserted discrimination claims notwithstanding the enactment of ARPA.  *See id.*; *see also Crewzers*, 741 F.3d at 1383 (quoting *Ridge Runner Forestry v. Veneman*, 287 F.3d 1058, 1062 (Fed. Cir. 2002)) ("It is axiomatic that a valid contract cannot be based upon the illusory promise of one party").

Because Plaintiffs do not allege well-pleaded facts that, if taken as true, establish all the necessary elements to establish an implied-in-fact contract, Plaintiffs fail to state a plausible claim for breach of an implied-in-fact contract.  *See Am. Bankers*, 932 F.3d at 1381-82.  Accordingly, the Court **GRANTS** the Government's Motion to Dismiss Count III.

## IV.    Conclusion

For the above reasons, this Court **GRANTS** the Government's Motion to Dismiss the entire complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge
